**Date: October 29, 2021**
**The following is ORDERED:**



BY THE COURT:

TERRENCE L. MICHAEL
UNITED STATES BANKRUPTCY JUDGE

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| IN RE:<br><br>JERRY C. WEBB and<br>BARBARA JO WEBB,<br><br>       Debtors. | Case No. 20-80733<br>Chapter 7 |
| CHARLES GREENOUGH, TRUSTEE,<br><br>       Plaintiff,<br><br>v.<br><br>JERRY C. WEBB, AS CO-TRUSTEE OF THE WEBB FAMILY REVOCABLE TRUST; and BARBARA JO WEBB, AS CO-TRUSTEE OF THE WEBB FAMILY REVOCABLE TRUST,<br><br>       Defendants. | Adversary No. 21-08011 |

# MEMORANDUM OPINION

All parents have had moments when their children exercise poor judgment. When they are little, we may be able to protect them from a hot stove or falling down the stairs but eventually, we must allow them to use their own judgment and let the chips fall where they may. In my house there was a saying for just such an occasion: "I can't protect you from you."

The law has acted where parents cannot through recognition of the spendthrift trust. A spendthrift trust provides some amount of money to an individual while preventing them from pledging the trust as collateral for a debt or taking the entire balance of the trust to make a potentially foolish purchase, like investing in an ostrich farm in Arizona. In this case, rather than a parent or wealthy uncle trying to protect the improvident child, the debtors have attempted to place their own assets in a spendthrift trust, maintaining control over the assets while claiming not to legally own them. In other words, the debtors in this case are trying to protect themselves from, well, themselves, or more accurately, trying to keep their assets from the reach of their creditors. Charles Greenough ("Greenough"), the bankruptcy trustee in debtors' case, is seeking to recover the assets in the spendthrift trust for the benefit of creditors. The facts are not in dispute, and the law is equally clear.

## Jurisdiction

This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334(b), and venue is proper pursuant to 28 U.S.C. § 1409. Reference to the Court of this matter is proper pursuant to 28 U.S.C. § 157(a). This is a core proceeding as contemplated by 28 U.S.C. § 157(b)(2)(A) and (E).

## Summary Judgment Standard

Presently before the Court is Greenough's Motion for Summary Judgment and Brief in

Support (the "Motion"),[1] and Response to the Motion for Summary Judgment filed by Jerry C. Webb and Barbara Jo Webb, Co-Trustees of the Webb Family Revocable Trust (collectively the "Defendants" or "Webbs" or "Debtors").[2]

The United States Court of Appeals of the Tenth Circuit has held that

> Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "An issue is 'genuine' if there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way." *Adler v. Wal–Mart Stores, Inc.,* 144 F.3d 664, 670 (10th Cir. 1998). "An issue of fact is 'material' if under the substantive law it is essential to the proper disposition of the claim." *Id.* Put differently, "[t]he question . . . is whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Shero v. City of Grove,* 510 F.3d 1196, 1200 (10th Cir. 2007) (quotation omitted). "On summary judgment the inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986) (quotation omitted).[3]

The Court will apply this standard to the Motion.

### Findings of Fact

There is no genuine dispute as to the following facts:[4]

1. The Webb Family Revocable Trust (the "Trust") was created effective December 16,

---

[1] Docket No. 13.

[2] Docket No. 23.

[3] *Becker v. Bateman*, 709 F.3d 1019, 1022 (10th Cir. 2013).

[4] These facts were alleged by Greenough in the Motion, Docket No. 13, at 2-3. The Webbs did not controvert these facts except to correct number 4 to reflect that the location of the cited Trust provision is in Article III instead of Article II as originally set forth in the Motion, and to admit number 6 but deny it so far as it draws a legal conclusion. As a result, these facts are deemed admitted for purposes of the pending summary judgment motion. *See* Bankr. E.D. Okla. LR 7056-

2010.[5]

2. The Debtors created the Trust as Grantors and are also the Co-Trustees.[6]

3. Under Article II of the Trust, Debtors have the right "to alter, amend, or revoke" the Trust during their lives. Upon revocation, any property held by the Trust shall be delivered to the Debtors or in accordance with their written directions.[7]

4. Article III of the Trust states that during the lifetime of the Debtors, the Trustees shall pay to the Debtors "such amounts of income or principal of the Trust Estate" as either Debtor "shall direct."[8]

5. The Trust is to be interpreted under and governed by Oklahoma law.[9]

6. Certain mineral interests underlying property in Stephens County, Oklahoma, are titled in the name of the Trust and generate significant royalty income. Attached as Exhibit 2 to the Motion is a true and correct copy of a Quitclaim Deed dated October 22, 2012, and recorded on October 29, 2012, in the Office of the County Clerk of Stephens County, Oklahoma, covering the N/2 of the NE/4 of Section 16-T2N-R4W, Stephens County, Oklahoma. This

---

1(B) ("All properly supported material facts set forth in the movant's statement shall be deemed admitted for the purpose of summary judgment unless specifically controverted by a statement of the non-movant that is supported by evidentiary material.").

[5] A true and correct copy of the instrument creating the Trust, together with all amendments thereto, is attached as Exhibit 1 to Greenough's Motion, Docket Number 13.

[6] Trust, Ex. 1.2.

[7] Trust, Article II(A), Ex. 1.3.

[8] Trust, Article III(A), Ex. 1.3.

[9] Trust, Article IX(D), Ex. 1.16.

Quitclaim Deed recites that Debtor Jerry C. Webb received this property from The Webb Family Living Trust,[10] and by the Quitclaim Deed, he and Debtor Barbara Jo Webb transferred the property into the Trust.[11]

7. Attached as Exhibit 3 to the Motion is a true and correct copy of a payment stub relating to such mineral/royalty interests from the properties in Stephens County, Oklahoma, which shows that between January 1 and July 1, 2020, the Trust received $23,221.59 from Ovintiv Exploration relating to these interests.

8. The underlying bankruptcy case was initiated by the filing of Debtors' joint Voluntary Petition on July 29, 2020.

9. The Debtors are the only beneficiaries of the Trust during their lifetimes.[12] Distributions are only to be made to Debtors' living issue upon "the death of both" Debtors.[13]

To the extent the Conclusions of Law contain any items that should more appropriately be considered Findings of Fact, they are incorporated herein by this reference.

## Conclusions of Law

Greenough filed this adversary proceeding seeking a determination that the Debtors' interest in the Trust is property of the bankruptcy estate which should be turned over to him as Trustee

---

[10] The Webb Family Living Trust belonged to Debtor Jerry Webb's deceased mother. Defs.' Resp. 2,7, Docket No. 23.

[11] The Webbs admit that this Quitclaim Deed exists and was recorded. They state that whether the conveyance established "title" to the mineral interests in the Trust is a question of law.

[12] Trust, Article III(A), Ex. 1.3.

[13] Trust, Article V, Ex. 1.5.

pursuant to §542 of the Bankruptcy Code.[14] The Trust contains a spendthrift provision in Article VIII (titled "Spendthrift Trust") which states:

> No principal or income payable or to become payable under any of the Trusts created by this agreement shall be subject to the interference or control of any creditor of any beneficiary, or to be taken or reached by any legal or equitable process in satisfaction of any debt or liability of such beneficiary prior to its receipt by the beneficiary.[15]

Relying on Oklahoma law, Greenough asserts that this spendthrift clause is not enforceable, thus rendering Debtors' interest in the Trust property of the bankruptcy estate. Debtors do not dispute the spendthrift clause is unenforceable but argue this Court should rely on its equitable powers to deny him summary judgment. Debtors also point to other provisions in the Trust, other Oklahoma statutes, potential title issues, and the inherent volatility of oil and gas interests as issues of law that should preclude summary judgment.

*Enforceability of the Spendthrift Provision*

Property of the bankruptcy estate is defined in § 541 to include, with certain exceptions, "all legal or equitable interests of the debtor in property as of the commencement of the case."[16]

---

[14] Section 542(a) provides that

> Except as provided in subsection (c) or (d) of this section, an entity, other than a custodian, in possession, custody, or control, during the case, of property that the trustee may use, sell, or lease under section 363 of this title, or that the debtor may exempt under section 522 of this title, shall deliver to the trustee, and account for, such property or the value of such property, unless such property is of inconsequential value or benefit to the estate.

11 U.S.C. § 542(a). Unless otherwise noted, all statutory references are to sections of the United States Bankruptcy Code, 11 U.S.C. § 101 *et seq.*

[15] Trust, Article VIII, Ex. 1.15-1.16.

[16] § 541(a)(1).

One of those exceptions is a debtor's interest in a spendthrift trust, as provided in § 541(c)(2): "[a] restriction on the transfer of a beneficial interest of the debtor in a trust that is enforceable under applicable nonbankruptcy law is enforceable in a case under this title." At common law, a trust is not a valid spendthrift trust if a beneficiary has some incidence of ownership of the trust property such as the power to direct the distribution of trust property.[17] The Oklahoma Trust Act has codified the common law by providing that a person cannot create a trust for their own benefit which attempts to place their beneficial interest beyond the reach of their creditors:

> Nothing in this act shall authorize a person to create a spendthrift trust or other inalienable interest for his own benefit. The interest of the trustor as a beneficiary of any trust shall be freely alienable and subject to the claims of his creditors.[18]

Oklahoma's Discretionary and Special Needs Trust Act provides further clarification regarding a revocable trust that attempts to prevent creditors' access to assets in the trust:

> 1. Whether or not the terms of a trust contain a spendthrift provision, the following rules apply:
>    a. during the lifetime of the settlor, the property of a revocable trust is subject to the claims of the creditors of the settlor, and
>    b. a spendthrift provision is ineffective with respect to the settlor of a revocable trust while the trust is revocable. . . .[19]

As Greenough states, "[t]he Trust fits squarely within these [Oklahoma] statutes."[20] Debtors do

---

[17] *See* Restatement (Second) of Trusts, §§ 153, 156 (1959); Restatement (Third) of Trusts, § 58 (2003).

[18] OKLA. STAT. tit. 60, § 175.25(H).

[19] OKLA. STAT. tit. 60, § 175.92. This Act applies to trusts created or modified after November 1, 2010. *Id.* at §175.83. Section 175.92 is subject to the Oklahoma Family Wealth Preservation Trust Act, OKLA. STAT. tit. 31, § 10, *et seq.* The Family Wealth Preservation Act is not applicable to Debtors' Trust as it is not a "preservation trust" as defined in § 11(5)(c).

[20] Docket No. 13, p. 4.

not dispute that they are the trustors, grantors, creators, and settlors of the Trust.[21] They transferred property into the Trust. The Trust is a revocable trust whereby Debtors have the right at any time during their lifetimes to "alter, amend or revoke" the Trust and obtain the corpus of the trust upon demand.[22] They are the sole beneficiaries of the Trust so long as they are living. Oklahoma law does not authorize Debtors to create a spendthrift trust or otherwise create a restriction on transfers of property in a revocable trust for their own benefit, and any attempt to do so is ineffective. Because their attempt to create a spendthrift trust is ineffective under nonbankruptcy law, Debtors' interest in the Trust is property of the bankruptcy estate.

As trustee of the bankruptcy estate, Greenough may exercise the rights Debtors possess under the Trust. Debtors' interest in the Trust includes their rights as grantors to order payment of any amount of income or principal of the Trust. As Trustees of the Trust, Debtors also have the right and power to receive, retain, lease, sell, invest, and manage property of the Trust.[23] This includes entering into pooling agreements and other agreements related to the operation of the oil, gas and mineral interests held in the Trust. These rights are property of the bankruptcy estate subject to Greenough's control.

*Other Oklahoma Law*

Debtors admit the spendthrift provision in the Trust is not enforceable pursuant to OKLA. STAT. tit. 60, §§ 175.25(H) and 175.92(1). However, they assert that Oklahoma laws governing

---

[21] OKLA. STAT. tit. 60, § 175.3(B): "Trustor" means the maker, creator, donor, settlor, grantor, of a trust and the testator or testatrix of a will containing trust provisions.

[22] Trust, Article II(A), Ex. 1.3.

[23] Trust, Article VI, Ex. 1.5-1.13.

trust agreements are contradictory and complex; therefore, this Court should not view the spendthrift provision in isolation. They cite five additional Oklahoma trust statutes found in title 60 in support of their argument that their interest in the Trust is not property of the bankruptcy estate: OKLA. STAT. tit. 60, §§ 140, 143, 171, 175.23 and 175.24(A) ("Trust Statute § ____"). None lead the Court to the Debtors' desired conclusion.

Trust Statute § 140, entitled "Surplus to Creditors," states:

> Where a trust is created to receive the rents and profits of real property, and no valid direction for accumulation is given, the surplus of such rents and profits, beyond the sum that may be necessary for the education and support of the person for whose benefit the trust is created, is liable to the claims of the creditors of such person, in the same manner as personal property which cannot be reached by execution.[24]

The Oklahoma Supreme Court explains that this statute authorizes the creation of a spendthrift trust. If no valid provision is made for accumulation of trust funds, the trust is enforceable to the extent necessary to support and educate the beneficiary, and any surplus of the income over and above such amount can be reached by creditors of the beneficiary.[25] However, such trusts are only valid where the income is beyond a beneficiary's control. If a beneficiary has the power to convey or assign the income, there is no protection from liability for debt.[26] This limitation on the validity of spendthrift trusts is codified in Trust Statute §§ 175.25(H) and 175.92(1). Debtors' Trust falls into this category, rendering the spendthrift provision unenforceable and the Trust property of the bankruptcy estate.

Debtors also cite Trust Statute § 143, titled "Realty Passes Subject to Power," which states:

---

[24] OKLA. STAT. tit. 60, § 140.

[25] *See Frensley v. Frensley,* 1936 OK 382, 58 P.2d 307, 315-316.

[26] *Id*. at 316-317.

> In every case where a trust is valid as a power in trust, the real property to which the trust relates, remains in or passes by succession to the persons otherwise entitled, subject to the execution of the trust as a power in trust.[27]

This statute provides that real property may be transferred to (by will or otherwise) and held in a valid trust subject to the control of persons designated to hold property under the trust.[28] It does not require that real estate held in a trust remain there until it passes by succession to another person, nor does it prohibit a trustee from obtaining and exercising power over real estate owned by the trust. Nothing in Trust Statute § 143 aids the Debtors.

The next statute cited by Debtors is Trust Statute § 171, "Trusts Authorized," which states:

> Express trusts may be created in real or personal property or both, with power in the trustee, or a majority of the trustees, if there be more than one, to receive title to, hold, buy, sell, exchange, transfer and convey real and personal property for the use of such trust; to take, receive, invest or disburse the receipts, earnings, rents, profits or returns from the trust estate; to carry on and conduct any lawful business designated in the instrument of trust, generally to do any lawful act in relation to the trust property which any individual owning the same absolutely might do and to comply with the provisions of the Oklahoma Uniform Prudent Investor Act.[29]

This statute defines an express trust (distinguished from an implied or resulting trust) which is created out of a settlor's intent to create a trust to hold real and personal property and appoint a trustee with designated powers to sell, convey or dispose of trust property. A trustee may carry out "any lawful act in relation to the trust property." Trust Statute §§ 175.25(H) and 175.92(1) prevent a person from restricting access to trust assets via a spendthrift provision. Attempts to circumvent the operation of §§ 175.25(H) and 175.92(1) would be an unlawful act under Oklahoma trust laws.

---

[27] OKLA. STAT. tit. 60, § 143.

[28] *See Parks v. Lefeber,* 1933 OK 190, 20 P.2d 184.

[29] OKLA. STAT. tit. 60, § 171.

The Court finds no support for Debtors' position in this statute.

The remaining statutes cited are contained in the Oklahoma Trust Act.[30] Section 175.23, "District Court - Jurisdiction to Construe Instruments," provides that Oklahoma state district courts

> shall have original jurisdiction to construe the provisions of any trust instrument; to determine the law applicable thereto; the powers, duties, and liability of trustee; the existence or nonexistence of facts affecting the administration of the trust estate; to require accounting by trustees; to surcharge trustee; and in its discretion to supervise the administration of trusts . . . .[31]

Debtors cite Trust Statute § 175.23 without explanation. The statute specifies where venue lies, who may bring such actions, and the notice requirements for these actions. Bankruptcy courts have jurisdiction over all property, wherever located, of the debtor and of property of the bankruptcy estate.[32] This is an action to determine whether the Trust is property of the estate. This Court has jurisdiction to determine the issues herein.[33] Debtors admit this Court has jurisdiction to hear this adversary case, that it is a core proceeding, and that venue herein is proper.[34] The Court finds the statute interesting yet irrelevant.

Trust Statute § 175.24(A), titled "Powers of Trustees – Bond," enumerates powers of the trustee of an express trust in the absence of contrary or limiting provisions in the trust agreement. None allow a trustee to enforce an invalid spendthrift clause. In fact, paragraph B, identifying administrative rules a trustee must follow, expressly recognizes that its list is not exhaustive and

---

[30] OKLA. STAT. tit. 60, §§ 170, *et seq.*

[31] OKLA. STAT. tit. 60, § 175.23(A).

[32] 28 U.S.C. § 1334(e).

[33] *See In re Amerson,* 839 F.3d 1290, 1298-99 (10th Cir. 2016).

[34] Answer, ¶1, Docket No. 9.

that other laws may impose additional rules so long as not contrary to Trust Statute § 175.24.[35] This statute has no bearing upon the bankruptcy estate's interest in the Trust.

*Equitable Powers of the Bankruptcy Court*

In what can only be described as a "hail mary," Debtors appeal to this Court's equitable powers to allow them to retain the Trust. Debtors live on a fixed income and use royalty income from the Trust to pay taxes they owe as well as taxes owed by Jerry Webb's deceased mother. They argue that inclusion of their interest in the Trust in the bankruptcy estate will result in a windfall to Greenough and professionals employed to assist him in administering estate assets. They suggest that because there are other beneficiaries of this trust after they die and because the Trust was created as an estate planning tool, equity and fairness dictate that the Trust be excluded from the bankruptcy estate. Debtors cite the volatile nature of the oil and gas industry in which mineral interests may quickly lose their value and be unable to generate sufficient proceeds to cover the expenses of liquidation.[36] They suggest that title issues may exist which Greenough will need to cure before he can dispose of the assets, providing little to no benefit to creditors. Further, Debtors argue that attempts to liquidate Trust assets may expose Greenough and the bankruptcy estate to claims of breach of fiduciary duty. These arguments amount to little more than a plea to let the Debtors keep the Trust because they need the money more than the bankruptcy estate. Debtors chose to seek bankruptcy relief. One of the burdens imposed upon debtors who seek the

---

[35] *See* OKLA. STAT. tit. 60, § 175.24(B) ("[S]uch rules shall not be exclusive of those otherwise imposed by law unless contrary to these rules . . . .").

[36] Apparently, Debtors contend that an asset which recently generated over $23,000 of income over a six month period is of inconsequential value to their bankruptcy estate. The Court respectfully disagrees.

protection of the bankruptcy court is the surrender of all non-exempt, unencumbered property to a trustee for distribution to creditors. In exchange, debtors who have not acted improperly receive a discharge. Debtors have been given the benefit of the bargain in this case. They have obtained a discharge of their prepetition debt.[37] They may not ask the Court to set aside the operative provisions of the Bankruptcy Code for their benefit.

Bankruptcy courts possess equitable powers to carry out their duties, but those powers "can only be exercised in the confines of the Bankruptcy Code." [38] Section 105(a) grants authority to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code.]" In exercising these powers, a bankruptcy court may not contravene specific statutory provisions.[39] Estate plans, title issues, liquidation costs, and volatility in the oil and gas market are not considerations in determining whether Debtors' interest in the Trust is an asset of the bankruptcy estate. These may be factors Greenough considers in administering Trust assets, but they do not allow this Court to ignore §§ 541 and 542 or Oklahoma law and validate an invalid spendthrift trust.

Having thoroughly reviewed Debtors' arguments and cited statutes, the Court finds no cognizable defense to Greenough's Motion. Greenough is entitled to judgment as a matter of law.[40]

---

[37] Case No. 20-80733, Order of Discharge, Docket No. 24.

[38] *Law v. Siegel,* 571 U.S. 415, 420-21 (2014) (citations omitted).

[39] *Id.*

[40] As an alternative to granting summary judgment on Greenough's Motion, Debtors request that they be allowed to vacate their discharge and convert to a case under chapter 13. As the Court stated on the record during the hearing on this Motion, this adversary case is not the appropriate proceeding for seeking such relief; therefore, the Court will not entertain their request.

Greenough has pled no statutory basis for an award of attorney fees against the Defendants, therefore that request is denied.[41] The denial is without prejudice to whatever rights Greenough may have to recover said fees as an administrative expense of the underlying bankruptcy estate.

### Conclusion

The Trust funds are property of the bankruptcy estate. Greenough is entitled to the Trust assets in his capacity as trustee. Debtors shall turnover such assets to him pursuant to § 542 of the Bankruptcy Code.

The Motion is granted except for the request for attorney fees. A separate judgment in accordance with this Memorandum Opinion is entered concurrently herewith.

###

---

[41] *See In re Nichols,* 221 B.R. 275 (Bankr. N.D. Okla. 1998).